Case number 20-5227, New Life Care Hospitals of North Carolina, LLC, doing business as Life Care Hospitals of North Carolina, et al., at Balance versus Xavier Becerra in his official capacity as Secretary, United States Department of Health and Human Services. Mr. Healy for the at Balance, Mr. Pham for the appellate. Mr. Healy, good morning. Good morning. Please proceed. Thank you. May it please the Court, my name is Jason Healy on behalf of the appellants for long-term care hospitals who suddenly stopped receiving Medicare reimbursement for bad debts of dual eligible beneficiaries because the agency changed the reimbursement requirements under its so-called must-fill policy without notice, leaving the hospitals with no way to comply. The agency's action violated multiple sections of the Medicare statute, notably the notice and comment rulemaking requirement in the Medicare statute at Section 1395 H.H.A.2, the bad debt moratorium at Section 1395 F. Note, and the cost-shifting prohibition at Section 1395 X.V.1a Romanet I, as well as the bad debt regulation at 42 CFR Section 41389, and the Administrative Procedure Act at Section 706-2. Therefore, the appellants respectfully request this Court to reverse the district court and order HHS to calculate the reimbursement owed for their dual eligible bad debts without the must-fill policy or Medicaid R.A. requirements, plus prejudgment interest under Section 1395 O.O.F.2 of the Medicare statute. This Court's standard of review here is de novo for all issues. The Court is to review the agency's record under Section 706 of the APA to determine whether the agency's action was arbitrary and capricious, an abuse of discretion, not in accordance with the law, without observance of procedure required by law, or unsupported by substantial evidence. And the Court is to view the evidence in light most favorable to the hospitals, which is something we believe the district court did not do in this case. Now, these four hospitals are located in North Carolina, Pennsylvania. When I ask counsel, what is the policy that you are challenging, and when was that policy, according to you, promulgated or initiated? Thank you for the question, Judge Wilkins. And I know from your involvement in the Grossmont case you're familiar with the must-fill policy under the bad debt reimbursement scheme for Medicare. This particular requirement at issue is the Medicaid remittance advice requirement. It's Medicare's determination the sole document a provider has to submit to support dual eligible reimbursement for bad debt is a remittance advice from the state, which is a payment determination made on the Medicaid claim. So that's what's at issue. When are you saying that that policy was adopted? The district court in this circuit has already determined that that must-fill requirement with a Medicaid remittance advice was adopted in 2004 under the Joint Signature Memorandum 370. In this case, these hospitals received their dual eligible bad debt reimbursement without billing the state or submitting a Medicaid remittance advice from the state up until April 2008. So there's a period of about four years where the Medicare contractors were actually paying all the dual eligible bad debts without a Medicare remittance advice. And then suddenly, because CMS, the agency, instructed the intermediaries to impose the must-bill RA requirement on even non-Medicaid participating hospitals at that point in time, that's when they were subject to the must-bill policy. And the fact that the agency imposed that remittance advice requirement put them in what the district court has determined to be a catch-22. That clearly was the case here with these four hospitals. Let me interrupt you because what has confused me about this case is that your complaint in your briefing suggests that what you're challenging is a change that happened in April 2008 because you say that prior to that, bills were being reimbursed even when the state hadn't been billed. And so the change that occurred was in April 2008 when that stopped happening. So are you challenging an action or policy that happened in April 2008, or are you challenging the JSM in 2004? We're not challenging the JSM in 2004, and I think, Your Honor, this is a clear distinction that I hope the court will appreciate in the briefing. These four appellants, they do not challenge the must-bill policy in general. For hospitals that participate in Medicaid, this may be an inconvenience, as in Grossmont, but it is something that's possible to accomplish. For these hospitals, it was impossible to actually bill the state. They weren't recognized as Medicaid providers and received that remittance advice. So to answer your question, these hospitals do not challenge the JSM in 2004. They're challenging the agency's decision to impose the remittance advice requirement on these hospitals beginning in April 2008. Now, from the other cases decided by your district court, a number of decisions, the select specialty case issued by Judge Howell, the kindred health care case as well, we know that other long-term care hospital companies in the 2007 to 2008 timeframe also experienced the same change in policy by the agency, where the agency imposed this remittance advice requirement for the first time, thereby putting them in the position of having a catch-22. They couldn't bill the state. They couldn't get their remittance advice. Therefore, they couldn't get the Medicare reimbursement. Now, I want to ask you about the administrator's ruling, because as I read the administrator's ruling at JA 731, this is page, I guess, 18 of the administrator's ruling. The administrator said, in so many words, the hospitals have alleged that claims have been paid, where even without state remittance advices, and that they were exempt from this requirement, but the administrator said that wasn't because of any agency policy. Maybe it happened, but it wasn't as a result of agency policy. Basically, mistakes happen. Some things fall through the cracks. And so the administrator basically found that what you were challenging, as far as whatever change happened around April of 2008, that change was not as a result of agency policy. And it seems to me that even though we reviewed a district court de novo on summary judgment, we still employed a substantial evidence and or arbitrary and capricious review under the APA of the administrator's ruling. And so tell me why that finding that there was no policy that affected you wasn't supported by substantial evidence in this administrative record. Your Honor, the fact is that the agency did not issue anything writing stating this change in policy. Nevertheless, the evidence in the record, which includes the sworn testimony of the provider's witness, the director of reimbursement for the appellants, stated that the bad debt was paid without bailing the state or remittance advice from the state in past periods. In fact, during this four years since the JSM was issued, it was only in April 2008 that the cost report started to be adjusted. And that's corroborated by the record in the other cases, Your Honor. Let's suppose we accept that it's paid by contractors. And if the contractors pay it in, you know, either as a mistake or kind of in defiance of agency policy, but then the contractors start following agency policy, then how – I mean, that's essentially what the administrator seems to have found. Then how do you have a claim? Well, Your Honor, Judge Howell, the specialty decision determined that this was, in fact, a substantive change that was imposed upon the hospitals. The fact that they had to enter into contracts with the Medicaid programs to participate, which they previously didn't have. When Medicaid participation is not a requirement under the Medicare statute or the regulations to be reimbursed by the Medicare program. And therefore, it fits within the ALENA structure of rationale that this is an interpretive rule, but it had to go through notice and comment rulemaking. The fact is that the appellant here did not receive any notice whatsoever that they would have to comply with this Medicaid remittance advice only requirement even after the JSM was issued. And so had they received such notice, Your Honor, they certainly would have tried to enroll with these Medicaid programs sooner or convince the agency through the comment process that it was not a good policy, that there needed to be some exception, which, in fact, was the case leading up to April 2008 for these particular hospitals. All right. Judge Walker, do you have any questions? I don't. Thanks, Judge Henderson. All right. We'll hear from Mr. Phan. Good morning. May it please the court. Dennis Phan on behalf of the United States. I just wanted to pick up on a question that Judge Wilkins was asking about with respect to the non-Medicaid participating aspect of all this. The must-build policy has been in place for the better part of four decades, and we cite to the PRM manual provisions that have been in place since 1974 on this. And it's never let a hospital exempt itself from the policy by dropping out of Medicaid. Mr. Phan, did the R.A. requirement go back to the 70s? The R.A. requirement was part of the intermediary manual, and at least that we cite to some other provisions that were part of the intermediary manual. But I just want to point out that at least the basic must-build policy, the fact that you need to build estates, has never, has always been in place since 1974, and it's never included an exemption where if you want to get out of. How far back does the R.A. requirement go? The R.A. requirement we think at least goes back to before 1987, which is before the bad debt moratorium, and we discussed this briefly on page 21, I believe, of our brief. The one point I want to address with the R.A. requirement is I actually don't think it matters here at all. As this court found in Grosvenor, and just to back this up a little bit, there's two requirements. You submit a bill to the states and to the state Medicaid system, and then you wait. The state says, you know, here's my determination. This is how much, you know, the state Medicaid system owes you. Plaintiffs here haven't even gotten past that first step, and the district court decisions that they cite all address the second step. I think they actually, all those decisions, in a way, support us. Mercy General, for instance, says that there's two steps of this, and the provider has to meet the first one first. They have to first go out there and go build the state Medicaid systems. Mr. Pham, I take that point, but the second requirement, the second part, the R.A. requirement, I know you just said it goes back to before 1987. It would be helpful if you can point to a date that it originated. Can you tell us the year it originated? I can't tell you the exact year that it originated, Your Honor. What we cite to is a 1985 intermediary manual, and I misstated this. It's on page 26 of our brief. We cite to a 1985 intermediary manual. These manuals are updated periodically. We cite to the 1974 PRM, for example, in our briefs. There's earlier versions of that PRM from before 1974. It's just that those aren't in the record, and, you know, usually in the administrative process, the government or the contractor submits some version of the pre-1987 manual. But the one that we're citing to is since at least 1985. Let me go back. Oh, no, please finish that sentence. Oh, and it says that you need to have a written notice of rejection from the states, and that's the R.A. requirement. That's the exact same thing as the R.A. requirement. Yeah, I actually think a lot of these district court decisions, if you want to sort of get down to brass tacks on this, stem from a confusion about sort of jargon and the jargon that's changed in the Medicare and Medicaid setting over the past four decades. I'll be the first to admit that they didn't use the words remittance advice in 1980. They didn't talk about it in that way. Remittance advice is kind of a funky term. But the thing they did say is you need to go to the states. You need to get a state determination. That's exactly what this court said in Grossman. You know, that might be called a remittance advice. It might be called a rejection letter. It might be called a reimbursement denial. It might be called any number of things. And I think that's one of the things that district courts in this area have gotten hung up on a little bit, where they look at the 1985 manual. Let me ask about those decisions. Do you think that they have any kind of or should have any kind of estoppel effect on the district court in our case? And I take it you probably don't think that. So if you can kind of walk me through, you know, you the government were certainly well represented in those cases. The district courts found violations of the 1987 moratorium. Select found that there was a change in policy. And then the district court in our case did not did not attribute any kind of estoppel effect to those. I'm not asking about stare decisis effect. I'm asking about estoppel effect. Can you kind of talk me through why there should be no estoppel effect? I mean, there's there's, of course, no non-mutual non-mutual collateral estoppel does apply against the government. But beyond that, I mean, there's a host of complicated factors about when the government takes appeals from adverse decisions. And all those district court decisions did was remand those cases back to the agency for the agency to decide what amount of reimbursement was due. And I do want to address those decisions real quick, because I think there's three of them. As I mentioned, Mercy General really does help us because it says you really have to get through the must bill like the billing requirement first, which is exactly what these particular plaintiffs have not done because they've tried to exempt themselves entirely out of the Medicaid billing system. The other two decisions and select hospitality and select specialty and in kindred, we we disagree with in their entirety. I mean, select specialty says there was a change in policy because contractors applied pre-existing policy to the hospitals in those particular cases. The Supreme Court has made very clear that contractors don't have the authority to resolve policy questions. Contractors can't override CMS policy. They can't override the administrators policy. And that's for a really good reason. There are thousands of providers and hospitals out there. If they get approved for some sort of reimbursement and they shouldn't have gotten approved, that will never reach CMS's attention in those cases. That's because Mr. The government appeals select. And then a few days later, after the appeal, it withdrew its appeal. If select was wrong, as you just said, why drop that appeal? I can't get into the reasons why the government made certain decisions about whether to appeal or not. I will say there's, you know, the government is pretty judicious about when it decides to pursue appeals and when it doesn't decide to pursue appeals and that's a determination that the solicitor general has to make in individual cases about whether to pursue an appeal. So, you know, you can presume and that is fair. Let me ask one more question that I know I've apologized to my colleagues for going on as long as I have. But one more question on the district court's finding that there was a forfeiture on the 1987 moratorium argument point. What do you think the standard of review for us is in assessing whether the district court erred in finding forfeiture? Yeah, I think that's, you know, What I'll say is, you know, the board only addressed certain types of issues when it came, when this, you know, when the bad debt moratorium came before the board. The board said, You know, the requirement to bill passes the bad debt moratorium and that was never raised before the administrator and when it got to the district court, the district court found that that had been waived and it wasn't fully developed in the record. I think it's fully correct, at least for this court to just say that, you know, there wasn't actually a developed argument about the RA requirements as presented to the board and as presented to the administrator. I don't think we need to, you know, if this were a question of whether an argument was developed in the trial record, I think we'd be in sort of abusive discretion land for sure. But in terms of identifying which issues were in front of the board or actually addressed in a board decision, that seems to be a fairly straightforward kind of legal inquiry. And I just want to point out with the waiver question, I don't think the waiver question is just whether sort of in the abstract, whether they've waived the bad debt moratorium, it really is have they developed this argument before the board. What they included was, you know, a short section that was about a page and a half in the legal standards section of their final post hearing brief with no citations to any policy that the secretary had changed. No announcement of any policy of the secretary changing any sort of policy. And the board said, well, like the only thing that we think you've raised is the billing requirement that's been in place for many decades. And if there are no further questions, I see my time has elapsed in this courtship. All right, Judge Wilkins, any questions? No questions. All right, Mr. Healy, why don't you take two minutes. Okay, thank you very much. Just to respond briefly to some of the points raised by Mr. Fan. The first point is with regard to date for the remittance advice requirement, as I stated previously, that wasn't enunciated until 2004 in the JSM. The Kindred Healthcare case actually dealt with a very careful review of all those prior documents going back to the 1980s and previous and determined that the specific Medicaid remittance advice requirement is not contained in those documents. In the select specialty case, Judge Howell also addressed those documents, even though they weren't before the court officially. And so it's disingenuous for the government to say that there was in fact a remittance advice requirement dating back to before 1987. With respect to Judge Walker's questions about the Mercy, the Kindred, and the select cases, the fact is the government did not appeal those decisions. The select specialty case was appealed but withdrawn. The government has not defended its position in those cases, and we believe those three decisions in particular form a constellation of decisions that all reach the same point of view, the same judgment, that this change in fact did occur with a must-fill policy. Applying this remittance advice requirement to non-Medicaid participating providers at the same time, which created a substantive legal standard imposed upon them, and that violated that notice and comment requirement in the Medicare statute. And also, the two cases, Mercy and Kindred, decided it violated the bad debt moratorium. If I could just address the waiver issue very briefly, I would note that we had briefed the bad debt moratorium arguments quite a bit in our position paper. It was discussed at the PRB hearing. It was in our post-hearing brief. It was addressed in the PRB decision, and to some extent was actually discussed in the administrator decision as well. But we believe the court clearly erred in finding that this was an adversarial process at the administrator review level, when it doesn't have any of the hallmarks under the Sims Supreme Court case for being an adversarial proceeding. In fact, lined up with all those factors in Sims for determining that was not adversarial. And we think the court should have not created a judicially imposed waiver requirement for this process that's been in place for about 50 years with the PRB and the administrator. I've practiced before the board administrator for 20 years, and we've never had this type of rule. These are comments only, optional, and submitted to the administrator solely for their consideration as they do a plenary review of the PRB decision and the entire record. So I submit to your honors that that was a clear error by the district court. And this is actually an area where this court can review that issue de novo under the Koch versus White case that the circuit issued in 2014, that that issue exhaustion requirement can be reviewed de novo to answer Judge Walker's question. I see him over my time. All right. Thank you very much. Thank you, counsel, and your case is submitted.
judges: Henderson, Wilkins, Walker